THE STATE OF OHIO, APPELLEE, *v.* LAWRENCE, APPELLANT.

[Cite as State *v.* Lawrence (1989), 44 Ohio St. 3d 24.]

(No. 88-1127—Submitted February 22, 1989—Decided July 5, 1989.)

*John T. Corrigan,* prosecuting attorney, and *Frank C. Gasper,* for appellee.

*Friedman, Gilbert & Berezin* and *Gordon S. Friedman,* for appellant.

*Per Curiam.* Lawrence appeals his aggravated murder convictions and death sentences. For the reasons that follow, we uphold appellant's convictions, vacate both death sentences, and remand to the trial court for resentencing in accordance with this opinion.

## I

In his first proposition of law, appellant argues that he was denied due process of law in violation of the Fourteenth Amendment to the United States Constitution when the trial court refused to instruct on the lesser included offense of voluntary manslaughter. We disagree.

Although voluntary manslaughter may be an inferior degree of aggravated murder, see *State* v. *Deem* (1988), 40 Ohio St. 3d 205, 533 N.E. 2d 294, paragraph two of the syllabus, appellant was entitled to the jury instruction only if there was evidence on which the jury could have reasonably found that the appellant knowingly caused the deaths of Jesse and Cheryl Mooney while acting "* * * under the influence of sudden passion or in a sudden fit of rage, either of which * * * [was] brought on by serious provocation occasioned by the victim[s] that * * * [was] reasonably sufficient to incite * * * [appellant] into using deadly force * * *." R.C. 2903.03(A). See *State* v. *Kidder* (1987), 32 Ohio St. 3d 279, 280, 513 N.E. 2d 311, 314; *Keeble* v. *United States* (1973), 412 U.S. 205. Stated in the converse, appellant was not entitled to the jury instruction unless the jury could have reasonably found that the victims seriously provoked appellant *and* that the serious provocation was reasonably sufficient to have incited him into using deadly force.

However, a review of the evidence of provocation[2] reveals that appellant and his victims had a long history of neighborhood disputes, that his neighbors had filed criminal complaints against him that resulted in his incarceration, that he was disturbed by the victims' loud party, and that his victims and a guest verbally abused him. While these incidents were undeniably provocative, the question remains whether they amounted to serious provocation that was reasonably sufficient to incite appellant into using deadly force.

Addressing that question in *Deem, supra,* we identified several factors, as set forth by the Eighth Appellate District in *State* v. *Mabry* (1982), 5 Ohio App. 3d 13, 5 OBR 14, 449 N.E. 2d 16, relevant to this determination:

"* * * In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time." *Deem, supra,* at paragraph five of the syllabus.

In *Deem,* we found that a historically stormy relationship and the bumping of the offender's car by the victim's car were insufficient, as a matter of law, to incite the offender into using bodily force. *Deem, supra,* at 211, 533 N.E. 2d at 300.

Examining the evidence of provocation, and considering the emotional state of appellant, as well as the conditions and circumstances that surrounded him at the time, we reach the same conclusion here. We believe that the jury could have reasonably found that the victims' activities coupled with appellant's mental state[3] caused appellant to act under the influence of sudden passion or in a sudden fit of rage,

---

[2] We reject appellant's suggestion that the shots fired towards his house by Jesse Mooney should be considered as additional provocation in this context. Notably, Jesse Mooney fired his handgun *only after* appellant had wounded Cheryl Mooney and her brother-in-law with the first blast from his shotgun. At the time of the Mooney shots, appellant had already made the decision to use deadly force against the Mooneys.

[3] All three psychological experts concurred that appellant was suffering from a

but as stated we do not believe that the jury could have found that the provocation was reasonably sufficient to have incited him into using deadly force.

Thus, an instruction on voluntary manslaughter was not supported by the evidence presented in this case, and was properly refused. Accordingly, we find appellant's first proposition of law to be without merit.

## II

Appellant next claims that he was denied due process of law in violation of the Fourteenth Amendment to the United States Constitution when the trial court instructed the jury that appellant had the burden to prove the existence of mitigating factors by a preponderance of the evidence before the jury could weigh them against the aggravating circumstances. Complaining that the challenged instruction precluded the jury from weighing evidence that, while not satisfying the evidentiary standard, may have been relevant to the mitigation of the penalty of death, appellant invites us to reconsider our opinion in *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 15 OBR 311, 473 N.E. 2d 264, in light of recent decisional law on the federal level.[4]

We decline this invitation. Further, our holding *infra,* that the aggravating circumstances of this case do not outweigh the mitigating factors beyond a reasonable doubt, renders moot appellant's argument. However, we do believe that a jury instruction that closely tracks R.C. 2929.03(D)(1)

and which does not place the burden of proving the existence of a mitigating factor by a preponderance of the evidence on the defendant would adequately guide a jury in its deliberations during the penalty phase of a capital trial. Further, such an instruction would ensure that Ohio jurors clearly understand that they are to consider all mitigating evidence in reaching their sentencing recommendation.

Thus, we believe that it would be the better practice for Ohio trial judges to follow the precise language of R.C. 2929.03(D)(1) for their penalty-phase jury instructions on this subject.

## III

Next, appellant challenges the manner in which the jury, the trial court, and the court of appeals considered the evidence of mental disease or defect as a mitigating factor. Although the issues involving the jury instructions and the trial court's opinion were not raised or briefed in the court of appeals, they are considered here to determine whether plain error exists. See *State* v. *Greer* (1988), 39 Ohio St. 3d 236, 244, 530 N.E. 2d 382, 394. There was error here. However, because in our independent weighing we find that the aggravating circumstances do not outweigh the mitigating factors beyond a reasonable doubt, the question of error below regarding appellant's mental disease or defect as a mitigating factor is moot. Nevertheless, we proceed to resolve the question for the purpose of preventing such error in the future.

---

post-traumatic stress disorder and that he acted out of anger.

[4] In a recent *en banc* decision by the Ninth Circuit Court of Appeals, the court found the Arizona death penalty statute to be unconstitutional because, among other flaws, it required the defendant to prove the existence of a mitigating factor by a

preponderance of the evidence before it could be weighed against the aggravating circumstances. The court reasoned that such requirement violated the principle that "* * * a sentencing court must weigh all relevant mitigating evidence against the aggravating circumstances." *Adamson* v. *Ricketts* (C.A. 9, 1988), 865 F. 2d 1011, 1041.

### A

Appellant complains that the jury was improperly instructed in two instances. First, he challenges the trial court's failure to explain the differences between the standard for the defense of insanity and the standard for the mitigating factor of the defendant's mental state. He asserts that the inadequacy of the jury instruction, exacerbated by the prosecutor's misstatement of the law[5] during his penalty-phase closing argument, caused the jury to improperly use the higher standard for the defense of insanity in its mitigation deliberation.

In *State* v. *Rogers* (1985), 17 Ohio St. 3d 174, 17 OBR 414, 478 N.E. 2d 984, vacated and remanded (1985), 474 U.S. 1002, reaffirmed (1986), 28 Ohio St. 3d 427, 28 OBR 480, 504 N.E. 2d 52, reversed and remanded upon reconsideration on other grounds (1987), 32 Ohio St. 3d 70, 512 N.E. 2d 581, we held:

"The trial court is required to give a full and correct statement of the law so that the jury can apply the law to the facts in evidence before it. Such a requirement does not obligate the trial court to explain to the jury the difference between the insanity defense and the defendant's mental state as a mitigating factor at the penalty phase of the trial." *Rogers* (1985), *supra,* at paragraph five of the syllabus.

Here, as in *Rogers,* the trial court gave a full and correct instruction on the mitigating factor and defense counsel did not request supplemental jury instructions. However, in view of the prosecutor's misstatement of the law on this issue, we believe the trial court should have corrected any misconceptions on the part of the jury which may have resulted therefrom. While the court sustained appellant's objection to this misstatement, it did not instruct the jury to disregard it. In light of its later statement that the jury "must not speculate as to why the Court sustained" an objection, we believe the trial court effectively denied appellant the opportunity to have his mental condition considered by the jury in mitigation, for a juror could reasonably have concluded that appellant's mental disorder was to be considered at the sentencing phase exactly as it had been considered at the guilt phase.

Secondly, appellant challenges the jury instruction on mitigating factors. The trial court instructed as follows:

"Mitigating factors are factors, while they did not justify or excuse the crime, nevertheless in fairness and mercy may be considered by you as extenuating or reducing the degree of the defendant's blame or punishment."

Appellant argues that the trial court's use of the word "blame" in its instruction improperly related the mitigating factors to his culpability. In *State* v. *Holloway* (1988), 38 Ohio St. 3d 239, 527 N.E. 2d 831, we explained that "* * * mitigating factors under R.C. 2929.04(B) are not related to a defendant's culpability but, rather, are those factors that are relevant to the

<hr>

[5] During the course of his argument the prosecutor misstated the law, asserting that there was no difference between the standards for the defense of insanity and the mitigating factor of appellant's mental state:

"And here is the big one. You know this is the deja vu. This is the one, go back and reconsider the fact whether at the time of committing the offense the offender, because of mental disease or defect, lacked substantial capacity to conform his conduct to the requirements of the law.

"Haven't you heard that before. Wasn't that the test we just went through. You already addressed this issue. You want to address it again, fine. Go back and address it again."

issue of whether a defendant convicted under R.C. 2903.01 should be sentenced to death." *Id.* at 242, 527 N.E. 2d at 835.

The challenged jury instruction, appellant argues, defines all the mitigating factors in terms of culpability as well as penalty. We believe that use of the word "blame" alone would not have constituted prejudicial error, and that the jury instructions in this case, taken as a whole, did indicate that the penalty phase was for punishment determination and not for assessment of culpability. However, considering the reference to "blame" in connection with the prosecutor's earlier misstatement of the law and the trial court's failure to correct same, we believe that the trial court did, in effect, improperly raise the mitigating factor of appellant's mental state to the level of the defense of insanity. Consequently, as stated above, appellant was deprived of consideration of the mitigating factor of his mental state because the jury had already rejected his insanity defense at the guilt phase of the trial.

## B

Appellant also claims that the trial court incorrectly used the stricter standard of the defense of insanity rather than the standard for the mitigating factor of appellant's mental state in its independent weighing of the aggravating circumstances and mitigating factors. In *Eddings* v. *Oklahoma* (1982), 455 U.S. 104, the United States Supreme Court reversed a death sentence where it found that the lower court confused the standard for considering a mitigating factor of the defendant's mental state with the standard for the defense of insanity.

The trial court reviewed the expert testimony adduced at the guilt phase of the trial in support of and in rebuttal to appellant's defense of insanity. As no further expert testimony on the mental state of appellant was presented in the penalty phase of the trial, the court relied, in large part, on the earlier testimony in considering the mitigating factor of appellant's mental state.

It appears from the language of its opinion that the court did not apply the correct standard in considering evidence of the mitigating factor of appellant's mental state. The trial court noted that both doctors for the state testified that appellant "suffered from Post-Traumatic Stress Disorder at the time of the instant offenses." However, the trial court found: "[T]he Post-Traumatic Stress Disorder did not at the time of the criminal acts with which the defendant is charged, so impair his reason that he did not know that these acts were wrong or that he did not have the ability to refrain from doing these acts." Although the court subsequently recited the proper standard for consideration of this factor, it appears the trial court applied the insanity defense standard and on that basis failed to give any weight to this factor in mitigation.

## C

Finally, appellant complains that the court of appeals omitted the word "substantial" before "capacity" from its holding in regard to the consideration of this mitigating factor. A review of the record and the court of appeals' opinion fails to reveal whether the omission was inadvertent. Regardless, any possible error in this instance is rendered moot by our independent review, *infra*, where we find that the aggravating circumstances do not outweigh the mitigating factors beyond a reasonable doubt, and vacate both death sentences.

## IV

In his third proposition of law, appellant contends that he was denied his

Sixth Amendment right to confront adverse witnesses and his Fourteenth Amendment right to due process of law by the trial court's restriction of his cross-examination of Susan Vlach.

Prior to the cross-examination, defense counsel participated in the Crim. R. 16(B)(1)(g) inspection of Vlach's written statement to police. The inspection revealed that she told the police that her husband, Chuck Vlach, had told her that appellant had called the police to complain about the party. During the course of his cross-examination, defense counsel attempted to question Vlach about her husband's statement concerning appellant's complaint to the police. The prosecutor's objection to the questions was sustained.

Appellant argues that the knowledge of the party guests, and specifically the knowledge of Jesse and Cheryl Mooney, that appellant had called the police to complain about the party makes the existence of further, more intense provocation of appellant by the Mooneys in retaliation for his complaint more probable than it would be without the evidence. This evidence, appellant argues, would have supported an instruction of voluntary manslaughter and would also have been relevant to the mitigating factor of whether it is unlikely that the offense would have been committed but for the fact that the offender was under duress, coercion, or strong provocation.

Even though Susan Vlach's testimony on the subject was excluded, the fact that the Mooney party, and in particular Cheryl Mooney, believed that appellant or his wife had called the police to complain about the noise was adduced through the testimony of Janet Lawrence. Lawrence testified that "[t]he next thing I heard Cheryl yelling. She said [in reference to Janet Lawrence], 'I know it was that * * * bitch that called. I seen [*sic*] her sitting by the window.' " Thus, the evidence excluded, *i.e.,* Chuck Vlach's statement to his wife that appellant had called the police, would have been merely cumulative to Janet Lawrence's testimony. Therefore, the exclusion of the evidence was, at most, harmless error beyond a reasonable doubt.

V

In his final proposition of law, appellant contends that he was denied a fair trial by an impartial jury in violation of the Sixth and Fourteenth Amendments to the United States Constitution when the trial court improperly removed or refused to remove a number of prospective jurors for cause.

A

Firstly, appellant argues that his conviction must be reversed because veniremen Schultz, Duncan, and Brooks were improperly excluded from the jury on the grounds of their personal opposition to capital punishment in violation of the standard established in *Wainwright* v. *Witt* (1985), 469 U.S. 412, and applied by this court in *State* v. *Rogers* (1985), *supra.*

We disagree. All three veniremen expressed opposition to the death penalty and personal views which would have prevented or substantially impaired the performance of their duties according to their instructions and oath. Thus, all three veniremen were properly removed for cause under the *Witt* standard. In addition to her personal beliefs, venireman Brooks was removed from the jury as unsuitable to serve due to her emotional state.[6] See

---

[6] Prospective juror Brooks was an elderly woman who cried during the voir dire.

Crim. R. 24(B)(14) and R.C. 2945.25 (O).

### B

Secondly, appellant argues that the failure of the trial court to remove venireman Murphy for cause deprived him of a fair trial and an impartial jury. He complains that Murphy expressed strong, pro-capital punishment views. We disagree. A review of his voir dire indicates that he was willing to follow the trial court's instructions and consider the other penalties. Therefore, the trial court properly denied appellant's challenge of venireman Murphy for cause under the *Witt* standard.

### C

Thirdly, appellant contends that he was denied his right to a fair trial and an impartial jury by the improper removal of venireman Jurcago. He argues that Jurcago was removed solely because she believed him to be not guilty — a position consistent with the presumption of innocence. We disagree again. While Jurcago did say that she believed appellant to be not guilty, the basis for her belief was not solely the presumption of innocence, but, at least in large part, her exposure to media reports. Jurcago was excluded on the basis of her conflicting answers to inquiry as to whether she would be able to set aside the information obtained through media reports and decide the case solely on the evidence. Thus, Jurcago was properly excused pursuant to Crim. R. 24(B)(9) and R.C. 2945.25(B).

For these reasons, appellant's final proposition of law is without merit.

### VI

As required by R.C. 2929.05(A), we now turn to our independent determination of whether the aggravating circumstances outweigh the mitigating factors in this case.

Each aggravated homicide of which appellant was convicted was proven beyond a reasonable doubt to have been part of a course of conduct involving the purposeful killing of two persons. As the penalty of death was imposed on both counts, we weigh the single aggravating circumstances of each offense against the mitigating factors we find to exist.

R.C. 2929.04(B) sets forth seven factors to be considered in mitigation of the death penalty:

"(1) Whether the victim of the offense induced or facilitated it;

"(2) Whether it is unlikely that the offense would have been committed but for the fact that the offender was under duress, coercion, or strong provocation;

"(3) Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law;

"(4) The youth of the offender;

"(5) The offender's lack of a significant history of prior criminal convictions and delinquency adjudications;

"(6) If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim;

"(7) Any other factors that are relevant to the issue of whether the offender should be sentenced to death."

There is nothing in the record relevant to mitigating factors (4) and (6). Accordingly, we examine the remaining factors.

The circumstances surrounding the offenses suggest, at least to some extent, the existence of factors (1) and (2). Firstly, the victims had been drink-

ing, listening to loud music, and talking throughout the evening and into the early morning hours. Disturbed by the noise from the party, appellant telephoned the local police department at approximately 11:00 p.m. to complain. His wife telephoned the police again after 3:00 a.m. when her son was awakened by party noise emanating from the Mooney garage. Aware that appellant was easily agitated, Cheryl Mooney shouted accusations to the Lawrences after the police officer had asked the Mooneys to take their party into their home. When appellant responded, words in the nature of a challenge were shouted by members of the Mooney party. We believe that the Mooneys invited confrontation by shouting words of challenge at appellant. Tragically, appellant accepted the challenge by using deadly force.

Secondly, in addition to the circumstances discussed above, Jesse Mooney fired two shots from a pistol toward appellant after appellant had fired his first shotgun blast causing non-fatal wounds to Cheryl Mooney and Thurman Dempsey. This action further provoked the appellant. In considering the provocation factor, we emphasize that the issue is not whether the provocation was sufficiently serious to legally justify or excuse the use of deadly force, but whether the provocation was serious enough to qualify as a mitigating factor for the purposes of R.C. 2929.04(B)(2). We find it reasonable to believe that there is a possibility that the aggravated murders may not have been committed but for the circumstances noted above. First, had the accusations and challenges not been shouted at appellant, he may have taken no action at all. Second, had Mooney not returned fire, appellant may well have stopped after his first shot; his lack of significant criminal history supports this conclusion. We by no means imply that a vic-

tim's actions in self-defense could in every case be viewed as "provocation." Indeed, we believe that only in rare cases would the evidence support the suggestion that the accused was unlikely to have committed the capital offense but for the defensive actions of the victim. However, under the peculiar circumstances of this case, we find this mitigating factor must be considered.

Regarding the third factor, Dr. John P. Wilson, a clinical psychologist, testified that appellant was suffering from four psychological disorders and that at the time of the offenses, appellant suffered from a mental disease or defect which rendered him unable to distinguish right from wrong. Although the jury rejected appellant's insanity defense, the mitigating factor of appellant's mental state can still be considered. Drs. Grant and Resnick, psychiatrists called as state witnesses, disagreed with Wilson's opinion as to appellant's ability to distinguish right from wrong, but they concurred that he was suffering from post-traumatic stress disorder at the time of the offenses.

Upon review of all expert testimony offered as to the mental state of appellant, we believe that he *did* lack *substantial* capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. Again we stress that a defendant need not establish the requisites to an insanity defense to have his mental condition considered in mitigation. The test is whether he lacks "substantial" capacity to appreciate the criminality of his conduct or to conform to the law, and we believe the evidence in this case is sufficient to meet this test. While appellant's mental disorders do not excuse his conduct, they are certainly relevant as mitigating factors.

Regarding the fifth factor, ap-

pellant did not have a significant criminal history. In fact, he had no felony record and his misdemeanor trespassing conviction was related to an earlier neighborhood incident. We find this mitigating factor exists.

Finally, we consider other factors that are relevant to the issue of whether the offender should be sentenced to death. We find his devotion to and care of his late mother during his high school years, his voluntary military service, and his deep love and caring for his children to be redeeming traits. We also find that appellant's mental health deteriorated following the loss of his son to sudden infant death syndrome. Appellant's severe depression caused by the loss of his son was untreated and eventually resulted in his quitting his job, the deterioration of his relationship with his neighbors, the disintegration of his marriage, and the tragic deaths of Cheryl and Jesse Mooney.

Having reviewed and independently weighed all the facts and other evidence disclosed in the record and having considered each offense and the offender as required by R.C. 2929.05(A), we find the aggravating circumstances the offender was found guilty of committing do not outweigh the mitigating factors beyond a reasonable doubt. As we vacate both sentences of death, the proportionality of the sentences of death in this case need not be considered.

Accordingly, we uphold appellant's convictions, vacate both death sentences, and remand this cause to the trial court for resentencing pursuant to R.C. 2929.06.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

SWEENEY, HOLMES, WRIGHT and H. BROWN, JJ., concur.

MOYER, C.J., DOUGLAS and RESNICK, JJ., concur in part and dissent in part.

ALICE ROBIE RESNICK, J., concurring in part and dissenting in part. I concur in the judgment of the majority which affirms the two aggravated murder convictions of appellant. I, however, dissent as to the vacating of the two death sentences imposed in this case.

R.C. 2929.05(A) requires this court to "independently weigh all of the facts and other evidence disclosed in the record in the case and consider the offense and the offender to determine whether the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors in the case, and whether the sentence of death is appropriate." Since I strongly disagree with the majority's interpretation of the evidence, I shall proceed with an independent review of the record.

Appellant was found guilty by a jury of the aggravated murders of Cheryl and Jesse Mooney and the attempted murders of Thurman and Deborah Dempsey. The jury found beyond a reasonable doubt that the aggravated murders were a part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons.

Appellant had entered pleas of not guilty and not guilty by reason of insanity. He contended that on the night in question he was suffering from post-traumatic stress disorder and at the time of the shootings he had a flashback to his days in Vietnam. He thought that he was in his barracks being fired upon.

In order to support this defense he had a psychologist, John P. Wilson, testify. Dr. Wilson is a professor at Cleveland State University. He testified that he is an authority on post-

traumatic stress syndrome, having received in excess of $100,000 in grants from the Disabled American Veterans Association, at least in part for research on the subject. It appears that Dr. Wilson had testified as an expert witness in thirty cases in fourteen states from 1977 to 1986 on post-traumatic stress disorder on behalf of Vietnam veterans. In this case, Dr. Wilson testified that appellant was suffering from post-traumatic stress disorder as a result of his service in Vietnam, in spite of the fact that appellant had only been in Vietnam from December 21, 1972 through January, 1973 and had not engaged in any combat. Dr. Wilson tested appellant extensively and testified that he had a lot of anger and hostility.

The state presented two psychiatrists, Drs. William H. Grant and Phillip J. Resnick.[7] Dr. Resnick testified that "* * * there were no real elements of post-traumatic stress disorder which played a role in the shooting." Further, he testified that appellant "* * * was not suffering from a mental disease or defect at that time which impaired his ability to know the wrongfulness of his act nor his ability to reframe [*sic*] from doing the act."

Based on the foregoing the jury was not required to give any weight to the mitigating factor in R.C. 2929.04(B)(3), *i.e.*, whether, "* * * at the time of committing the offense, the offender, because of a *mental disease or defect,* lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law[.]" (Emphasis added.) Since appellant was not suffering from a mental disease or defect, this factor should not be given any weight. Dr. Resnick, who is a highly respected forensic psychiatrist, clearly established that not only was appellant not suffering from a mental disease or defect but additionally he testified that appellant "* * * selectively chose and even distinguished Cheryl Mooney from her sister who looked somewhat like her, to shoot her in the back, to individually select who[m] he would shoot, all showed he had the ability to reframe [*sic*] from the acts he did not want to commit and the ability to carry out those acts that he elected to commit."

After entering the Mooney property, on the night in question, appellant initially shot Cheryl Mooney, not killing her. After he shot Jesse Mooney he sought out Cheryl again and, dragging her either by the arm or by her shirt, threw her on top of the body of her husband and shot her in the back at close range. In spite of these facts the majority finds that "* * * the Mooneys invited confrontation by shouting words of challenge at appellant." Where in the law do words ever justify the use of deadly force? The majority finds further mitigation in the fact that Jesse Mooney returned shots "after appellant had fired his first shotgun blast" which caused "non-fatal wounds to Cheryl Mooney and Thurman Dempsey." From these facts the majority finds factors 1 and 2 of R.C. 2929.04(B) present.

Additionally, when the police responded to the initial complaint about a loud party, they did not find loud noise. The record evinces that as the police officer approached the property he heard no loud music or yelling. He told Jesse Mooney of the complaint but did not identify the caller. The same officer testified that when he responded to the second call at approximately 3:15 a.m., he heard only low music coming from the garage. It was at this point that the music was turned

---

[7] Dr. Phillip J. Resnick is not related to Justice Alice Robie Resnick.

off and the Mooney party started to go into the house. What concrete evidence is there in the record to show that the victims induced the act or that appellant would not have committed it but for duress, coercion or strong provocation? On the contrary, there is no evidence in the record to show that appellant was under duress, coercion or strong provocation caused by the victims of these crimes. Rather, Dr. Grant testified that "this was not the behavior of a Marine in a fire fight." Dr. Grant also testified that "[t]he selectivity of the attack indicates to me rational motivation for the attack." Lastly, Dr. Grant testified that he believed appellant was very angry on the night in question. Upon consideration of all of the evidence, we simply have a very angry man who set out to kill the people he killed. Factors one and two, R.C. 2929.04(B)(1) and (2), have no support in the record and should be given no weight.

Factor four, R.C. 2929.04(B)(4), should be given no weight since appellant was not a youthful offender.

Factor five, R.C. 2929.04(B)(5), can be given some weight since appellant did not have any significant prior criminal convictions or delinquency adjudications.

Factor six, R.C. 2929.04(B)(6), has no weight in this case since appellant was the principal offender.

Factor seven, R.C. 2929.04(B)(7), is all-encompassing. Some weight should be given to the fact that appellant was a Marine for approximately four years. The majority gives great consideration as a mitigating factor to appellant's claim that he left high school to care for his ailing mother. After a review of the record it appears from a statement to Dr. Grant that the reason that appellant left high school was because he was not learning anything and found it boring. Dr. Grant found it interesting that appellant dropped out of high school to care for his ill mother but one year later, while his mother was still sick, he joined the Marines and left home.

In reality the background of appellant exhibits a man who was not interested in school. Having attained a "D" average, he dropped out without graduating and was unemployed for a considerable period of time prior to the date of the crimes. Appellant did in fact experience tragedies in his life but not unlike those of any other human being. On the night in question, appellant was not suffering from a mental disease or defect. The killings were not induced by the victims nor was appellant under duress, coercion or strong provocation. Rather, he was annoyed and flew into a rage, choosing a shotgun from the many firearms he possessed, and selectively sought out Cheryl and Jesse Mooney, with whom he did not get along, as his victims.

I find beyond a reasonable doubt that the aggravating circumstance of purposely killing or attempting to kill two or more persons outweighs any mitigating factor which appeared in the record.

Proceeding now to determine whether the death penalty is appropriate in this case, it is necessary to consider whether the sentence is excessive or disproportionate to the penalty in similar cases. R.C. 2929.05(A). This case involved the calculated murders of two persons and the attempted killings of two other persons. The sentences herein are neither excessive nor disproportionate to the sentences imposed in other cases which involved the killings of or attempt to kill two or more persons. *State* v. *Sowell* (1988), 39 Ohio St. 3d 322, 530 N.E. 2d 1294; *State* v. *Poindexter* (1988), 36 Ohio St. 3d 1, 520 N.E. 2d 568; and *State* v. *Brooks* (1986), 25 Ohio St. 3d 144, 25 OBR 190, 495 N.E. 2d 407. Thus, the sentences

of death are not disproportionate to sentences rendered in other similar cases.

In accordance with the foregoing, I would affirm the judgment of the court of appeals in its entirety.

MOYER, C.J., and DOUGLAS, J., concur in the foregoing opinion.

