## State v. Smith
[Cite as 4 AOA 9]

Case No. C-880287
Hamilton County (1st)
Decided June 6, 1990

Arthur M. Ney, Jr., Prosecuting Attorney, and Christian J. Schaefer, Esq., 420 Hamilton County Courthouse, Court and Main Streets, Cincinnati, Ohio 45202, for Plaintiff-Appellee.

Dale G. Schmidt, Esq., and Robert J. Ranz, Esq., 1071 Celestial Street, Cincinnati, Ohio 45202, for Defendant-Appellant.

Per Curiam.

This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Hamilton County Court of Common Pleas, the transcript of the proceedings, the assignments of error, and the briefs and arguments of counsel.

The Hamilton County grand jury charged the defendant-appellant, William H. Smith, in a four-count indictment with the aggravated murder, aggravated robbery, and rape of Mary Bradford. The indictment's two counts of aggravated murder were accompanied by death-penalty specifications, pursuant to R.C. 2929.04(A)(7), alleging that Smith committed the aggravated murder as the principal offender while he was also committing rape and aggravated robbery. Smith has assigned eighteen errors. Having considered each assignment of error, and having completed the other tasks mandated by law in the review of a capital case, we find, for the reasons that follow, that there is no merit in any of Smith's claims, and we affirm his convictions, including the death sentence imposed by the three-judge panel.

I.

On Saturday, September 26, 1987, Smith, who was then twenty-nine years old, was with forty-seven-year-old Mary Bradford at the Race Inn in Cincinnati. Smith left the bar first, while Bradford remained on the premises until about 11:45 p.m. At approximately 4:00 p.m. on the following day, Bradford's boyfriend became concerned because he had not seen her that day. He entered her unlocked apartment and found Bradford's body, nude from the waist down, on the bed. Missing from the apartment were Bradford's two television sets and her stereo components.

During their investigation, police found bloody footprints in the bathroom and blood on a living-room chair, the floor, and the bed. Near the bed on the floor, the police recovered Bradford's bloody underclothing. The coroner's vaginal examination of Bradford tested positive for semen, and during the autopsy the coroner located ten stab wounds in her neck and chest. Of these wounds, one penetrated her right lung, two penetrated the liver, and two penetrated the heart. The coroner concluded that although five of the wounds could ultimately have been fatal, the immediate cause of death was the two heart wound, one in the right atrium and the other in the right ventrical.

About 2:00 a.m. on the morning of September 27, 1987, Smith arrived at his mother's residence with two television sets and a stereo with speakers, all of which were later identified as the items taken from Bradford's apartment. The next morning Smith and another man removed the stereo and speakers from the premises, but they were later recovered by the police.

When the police executed a search warrant at the residence of Smith's mother, they also recovered the two television sets, bloody clothing and bloody shoes. Analysis of the blood on the clothing yielded a sample that matched Bradford's blood type.

In his confession Smith stated to police officers that he had gone to Bradford's apartment sometime after leaving the Race Inn. When he left her apartment, he remembered that he had forgotten his cigarettes and $2500 worth of cocaine. Upon his return to the apartment, Bradford told him that she did not have the cocaine, and after further discussion about restitution, she offered to reimburse Smith by having sexual relations with him. After having sexual intercourse, the two argued in the living room, and according to Smith, Bradford threatened him with a kitchen knife. He said that he took the knife from Bradford and stabbed her in the neck and stomach, causing her to fall back into a living-room chair, and that the two engaged in intercourse for a second time after Bradford retreated to the bedroom and fell on her bed. Smith admitted that he took from Bradford's apartment two televisions and the stereo components, but he claimed that they were his. He ended his account of the incident by telling the police that he dropped the knife in the river on the way to his mother's residence.

On October 21, 1987, Smith was indicted for the crimes that resulted in Mary Bradford's death. He entered a plea of not quilty to the four counts and the accompanying specifications. A separate plea of not guilty by reason of insanity was later withdrawn in open court. After Smith waived a jury trial, a three-judge panel heard the evidence and found Smith guilty of all counts and specifications on April 6, 1988. Five days after the guilt phase of the trial, the penalty phase commenced, and on April 14, 1988, the three-judge panel sentenced Smith to death.

## A.

Smith's first assignment of error contends that the state's use of the additional offenses of rape and aggravated robbery as statutory aggravating circumstances in a capital case failed to narrow the class of death-eligible offenders as required in *Zant v. Stephens* (1983), 462 U.S. 862, 103 S. Ct. 2733. This argument was most recently rejected in *State v. Broom* (1988), 40 Ohio St. 3d 277, 291, 533 N.E.2d 682, 697, which restated the Ohio Supreme Court's holding that eligibility for a death sentence under R.C. 2929.04(A)(7) requires proof of "* * * an additional fact, independent of the elements of aggravated murder ***," and, therefore, narrows the category of death-eligible aggravated murderers in compliance with *Zant*. See, also, *State v. Barnes* (1986), 25 Ohio St. 3d 203, 495 N.E.2d 922, certiorari denied (1987), 480 U.S. 926, 107 S. Ct. 1388.

## B.

In his second, fourth, fifth, seventh, eighth, and eighteenth assignments of error, Smith challenges the sufficiency and the manifest weight of the evidence adduced to support the rape and aggravated-robbery charges and the corresponding aggravated-murder specifications. He further argues that he should have been found not guilty of the death-eligible murder charges because the state failed to satisfy its burden of proving beyond a reasonable doubt that Mary Bradford was a living person when he had vaginal intercourse with her and when he stole her television sets and stereo components.

The prohibition against aggravated murder, as defined in R.C. 2903.01(B), is: "No person shall purposely cause the death of another while committing, attempting to commit or fleeing immediately after the commission * * * of rape, * * * [or] aggravated robbery * * *." The term "while" does not mean "simultaneously with," but requires only that the killing be "associated with" the rape and the aggravated robbery. *State v. Cooey* (1989), 46 Ohio St. 3d 20, 544 N.E.2d 895.

A review of the sufficiency of the evidence in a criminal prosecution according to *State v. Cooey, supra* at 26, 844 N.E.2d at 903, is limited to the following:

"[A] determination of whether there was evidence presented, 'which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.' *State v. Eley* (1978), 56 Ohio St. 2d 169, 172, 10 O.O. 3d 340, 341, 383 N.E.2d 132, 134. See, also, *State v. Glenn* (1986), 28 Ohio St. 3d 451, 456, 28 OBR 501, 505, 504 N.E.2d 701, 707."

If there is substantial evidence upon which a trier of fact can reasonably conclude that all elements of the charged offenses and specifications have been established beyond a reasonable doubt, the judgment should not be reversed on the sufficiency or the manifest weight of evidence. *State v. Barnes, supra* at 209, 495 N.E.2d at 927.

In the instant case, with respect to the rape charge and the specification of rape, Smith told police that he stabbed Bradford once, and that she fell back in the chair in the living room. She then walked to her bed, where he engaged her in

the vaginal intercourse that gave rise to both the charge and the specification of rape. He removed her clothes and, during the vaginal intercourse, ejaculated on her stomach. The investigation confirmed the presence of Bradford's blood on the chair and in the bed. Her bloody clothing was found on the floor near the bed. The substance found on her stomach tested positive for semen, consistent with Smith's statement to police that he ejaculated on her stomach. The coroner's opinion was that Bradford would have lived four to five minutes after the two wounds were inflicted in her heart. He was further of the opinion that the wounds in her neck and lung, which did not hemorrhage, meant that they were incurred either after Bradford died or when her heart could no longer pump enough blood to cause bleeding. Accordingly, portions of Smith's extrajudicial statements consistent with the physical evidence are substantial evidence to establish every element of the offenses and specifications, including the inference that Bradford was alive when Smith raped her and before she died of the fatal wounds.

In his eighteenth assignment of error Smith claims that the evidence was sufficient to find him guilty only of voluntary manslaughter because Bradford first threatened him with the knife. Voluntary manslaughter may be a lesser included offense of aggravated murder, *State v. Deem* (1988), 40 Ohio St. 3d 205, 533 N.E.2d 294, but the trier of fact must reasonably be able to find that a defendant knowingly caused the victim's death while acting "under the influence of sudden passion or in a sudden fit of rage, either of which * * * [was] brought on by serious provocation occasioned by the victim that * * * [was] reasonably sufficient to incite * * * [defendant] into using deadly force" R.C. 2903.03(A). The test to determine if the provocation was reasonably sufficient to incite Smith to use deadly force required the three-judge panel to consider Smith's emotional and mental state and the conditions and circumstances surrounding him at the time. *State v. Lawrence* (1989), 44 Ohio St. 3d 24, 541 N.E.2d 451.

Reviewing the evidence in connection with Smith's assertion that Mary Bradford pulled the knife when he told her that he needed more than sex as restitution for his cocaine, we hold that the three-judge panel correctly concluded that the claimed provocation was not reasonably sufficient to have incited Smith to use deadly force. Such a conclusion is amply supported both by evidence of the physical limitations associated with Bradford's severe respiratory problems and by the absence of any bruises or wounds on her body to reflect defensive action. The three-judge panel's rejection of voluntary manslaughter as a lesser included offense of aggravated murder in the first and second counts of the indictment was not error.

As to the second specification to the two counts of aggravated murder and as to the one count of aggravated robbery, Smith contends that he is not guilty as a matter of law because he stole the television sets and stereo after Bradford was dead. In each of these charges Smith was indicted for a violation of R.C. 2911.01(A) (2), which provides that "[n]o person in attempting or committing a theft offense * * * or in fleeing immediately after such attempt or offense, shall * * * [i]nflict, or attempt to inflict serious physical harm on another." This aspect of Smith's argument fails because we have previously held that, under the language of R.C. 2911.01(A) (2), "a living person" is not an element of aggravated robbery. *State v. Booker* (Feb. 19, 1986), Hamilton App. No. C-850376, unreported.

For all the foregoing reasons, then the second, fourth, fifth, seventh, eighth and eighteenth assignments of error are without merit.

C.

In his third assignment of error Smith contends that the three-judge panel erroneously considered the nature and circumstances of the offense as an aggravating factor in contravention of R.C. 2929.04(B), which provides that the three-judge panel, in determining if the death penalty is appropriate, "shall consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense." This claim is without merit in view of the Ohio Supreme Court's holding that the statute requires only that the trial court consider the "nature and circumstances" in determining the mitigating factors to be weighed against the established aggravating circumstances. *State v. Steffen* (1987), 31 Ohio St. 3d 111, 509 N.E.2d 383.

In discussing the "nature and circumstances" of the offense in its separate opinion, the three-judge panel stated:

*MITIGATING FACTORS INDIVIDUALLY CONSIDERED*

"The panel will now discuss the mitigating factors one by one as they apply to this case: (1) The nature and circumstances of the offense. There is absolutely no question that the defendant purposely, coldly and brutally killed Mary

Bradford while committing the offenses of rape and aggravated robbery. He stabbed the victim ten times and then raped her as the life drained from her body. This is not a mitigating factor and certainly does not militate for mercy."

In support of his assignment Smith directs our attention to a later statement in the three-judge panel's opinion under the heading "weighing the aggravating circumstances against the mitigating factors:"

"It is the opinion of this three-judge panel that the mitigating factors present pale before the fact that the defendant's actions were plotted, vicious, persistent and utterly callous. Mary Bradford was not stabbed once but ten times. She then had to suffer the final indignities of being raped by Smith while she lay dying and then have her property stolen."

Smith's argument is without merit under *State v. Poindexter* (1988), 36 Ohio St. 3d 1, 8, 520 N.E.2d 568, 574, where in its own independent weighing process the Supreme Court virtually approved this language by reaching the following conclusion:

"[I]n considering the "nature and circumstances of the offense," we find nothing mitigating in the cold blooded execution of one man and the attempted execution of another." In *State v. Steffen, supra* at 117, 509 N.E.2d at 390, the court said:

"Obviously, the nature and circumstances of certain offenses will be such that no mitigating feature can be extracted. By its statement on the gruesome and vicious nature of the murder, the trial court herein was merely justifying its conclusion that no mitigating factors can be gleaned from the nature and circumstances of this particular offense. We find nothing improper in the court's remarks."

To avoid "a rigid and mechanistic sentencing scheme," the trial court had latitude to cite this language as part of the "nature and circumstances" of the offense to reflect the reasons for its conclusion that the aggravating circumstances outweighed the mitigating factors. *State v. Jester* (1987), 32 Ohio St. 3d 147, 153, 512 N.E.2d 962, 969; *State v. Stumpf* (1987), 32 Ohio St. 3d 95, 98-100, 512 N.E.2d 598, 603-04.

### D.

In his sixth assignment of error Smith maintains that the Ohio statutory death-penalty scheme is unconstitutional under the Eighth and Fourteenth Amendments. In his seven subclaims listed (A) through (G), Smith argues in summary that the death penalty (A) serves no rational state interest; (B) is inflicted disproportionately on those who kill whites in contrast to those who kill blacks; (C) fails to narrow the class of death-eligible offenders and permits the state to obtain a death sentence on less proof in a felony-murder case than in a case involving prior calculation and design; (D) is quasi-mandatory rather than requiring the aggravating factors to outweigh substantially the mitigating factors; (E) impermissibly prevents a jury or three-judge panel from extending mercy; (F) in combination with Crim. R. 11(C) encourages the accused to plead guilty to avoid execution; and (G) fails to provide adequate standards for sentencing at trial and on review.

These seven subclaims were asserted verbatim by the defendant and rejected by the Ohio Supreme Court in *State v. Beuke* (1988), 38 Ohio St. 3d 29, 38-39, 526 N.E.2d 274, 285. Furthermore, they are not subject to appellate review here, having been waived because Smith did not properly raise them in the trial court. See *State v. Awan* (1986), 22 Ohio St. 3d 120, 489 N.E.2d 277. The sixth assignment is overruled.

### E.

The tenth and sixteenth assignments of error contend that the trial court erroneously denied Smith's separate requests for funds to conduct a polygraph examination and to retain a pharmacologist for the purpose of interpreting, analyzing and advising counsel of the psychological effects of his substance and alcohol abuse.

The request for expert assistance is directed to the trial court's sound discretion and, as provided in R.C. 2929.024, may be granted to an indigent when the requested services are reasonably necessary for proper representation. *State v. Beuke, supra* at 36, 526 N.E.2d at 282. The test to determine if the trial court abused its discretion in denying a funding request for expert assistance depends upon the following threshold showing: (1) the value of the expert to the defendant's proper representation, and (2) the availability of alternatives to satisfy the same function as expert assistance. *State v. Jenkins* (1984), 15 Ohio St. 3d 164, 473 N.E.2d 264, paragraph four of the syllabus.

In the case *sub judice*, the record does not demonstrate that the trial court abused its discretion in denying Smith expert assistance for the administration of a polygraph examination. In finding that the accused failed to establish any tangible benefits from a polygraph examination in the presentation of his case, we said in *State v. Jamison* (Feb. 17, 1988), Hamilton App. No. C-

850753, unreported, slip op. at 17, "[W]e perceive nothing unreasonable or manifestly unfair in requiring defense counsel to rely upon the word of their client to render a proper defense."

Smith's motion requesting appointment of a pharmacologist, as the trial court observed, also failed to specify how that assistance was reasonably necessary to his defense. Furthermore, Dr. Nancy Schmidtgoessling, a clinical psychologist and stipulated expert in social psychology, testified as a defense witness in the penalty phase concerning the effects of substance and alcohol abuse upon Smith. In her opinion Smith was only a moderate user and was only moderately affected by intoxicants. Therefore, we find no merit in these assignments of error.

### F.

In his thirteenth assignment of error Smith contends that the three-judge panel, contrary to R.C. 2929.04(B)(7), failed to consider as a catch-all mitigating factor Smith's cooperation with law enforcement as evidenced by his confession. While a defendant's cooperation may arguably fall within the catch-all factor, *State v. Steffen, supra* at 117, 509 N.E.2d at 390, fn. 9, Smith did not voluntarily surrender. His cooperation was, at best, minimal in that he withheld incriminating information during his interrogation. We are not persuaded on balance that Smith's conduct in custody should have been given mitigating weight as a reflection of his cooperation with law enforcement. His argument is also inconsistent with the assertion in his fourteenth assignment of error. The thirteenth assignment of error is not well taken.

### G.

In his fourteenth assignment of error Smith challenges the trial court's admission of his tape-recorded confession into evidence on grounds that it was not voluntarily given and that he did not knowingly waive his rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S. Ct. 1602. Although he acknowledged his signature on the waiver-of-rights form, Smith testified at the hearing on the motion to suppress that in the period between 11:00 a.m. and 3:00 p.m., which was one-half hour before his arrest, he consumed twenty-four bottles of beer and smoked a quarter gram of cocaine and a marijuana cigarette laced with cocaine. He also testified that he made inculpatory statements during the interrogation only because Officer Hennekes grabbed him by the collar, pushed him against the wall, and threatened to shoot him.

Whether a confession is involuntarily obtained must be viewed in light of the totality of the circumstances. The determination requires consideration of such factors as the defendant's age, mentality and prior criminal experience, evidence of physical deprivation or mistreatment, and existence of threats or inducements. *State v. DePew* (1988), 38 Ohio St. 3d 275, 528 N.E.2d 542.

Smith's testimony about his interrogation and confession significantly differed from that of the interrogating officer and the state's witnesses. In finding that his confession was voluntary, the trial court was entitled to rely on evidence that Smith could read and write and had gone to the twelfth grade of school. The trial court concluded that because of his detailed narration of events from arrest through interrogation, Smith was not impaired by alcohol or drugs when he confessed, and that the credible evidence offered at the suppression hearing established that Smith's confession was not coerced.

In a suppression hearing the weight of the evidence and the credibility of witnesses are for the trier of fact. *State v. Fanning* (1982), 1 Ohio St. 3d 19, 437 N.E.2d 583. The record demonstrates that the trial court's findings are supported by the evidence. Accordingly, this assignment of error is overruled.

### H.

In his fifteenth assignment of error Smith relies upon the Eighth Amendment prohibition against cruel and unusual punishment, which, he contends, prohibits the execution of mentally retarded persons convicted of a capital offense. His assignment is not well taken for two reasons. First, although evidence of mental age is a mitigating circumstance related to substantial impairment of a defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the law, mental age alone does not preclude the execution of a mentally retarded person. *Penry v. Lynaugh* (1989), ___ U.S. ___, 109 S. Ct. 2934. In this case *sub judice* Smith did not claim that he was incompetent to stand trial and did not present any statistical or other objective evidence to substantiate his argument. Second, the evidence does not support Smith's claim that he was mentally retarded. According to the *Diagnostic and Statistical Manual of Mental Disorders*, Third Edition, American Psychiatric Association (1980), relied on by Dr. Schmidtgoessling, a diagnosis of mental retardation is indicated if a person's intelligence quotient (IQ) is normally 70, with the margin of

error in the range of 65 to 75, Dr. Schmidtgoessling noted Smith's IQ test result of 101 in 1965, and test results of 91 while he was in prison in 1980, 1986 and 1987. Although her own tests of Smith established a verbal IQ in the 70's and a performance IQ in the low 80's, Dr. Schmidtgoessling concluded that Smith was not mentally retarded because these scores reflected academic deficiencies rather than an inability to function.

### I.

In his seventh assignment of error Smith contends that prosecutorial misconduct during closing argument in the penalty phase violated his right to due process. He recites four instances in which he claims the prosecutor's remarks deprived him of a fair trial.

First, Smith cites the prosecutor's effort to compare him with other convicted murderers, namely "the John Byrds, the Allen Holloway, the Alton Colemans, the David Stevens *[sic]*." There was no prejudicial error in this instance because, in the absence of a jury, the court's decision to sustain defense counsel's objection to the remark was sufficient to remove any taint from the proceedings.

Second, Smith claims the prosecutor's reference to his lack of remorse was improper. This same reference was held to be proper and within the scope of argument relating to a defendant's history and character in *State v. Beuke, supra* at 32, 526 N.E.2d at 279. Dr. Schmidtgoessling also testified in the penalty phase that the Smith had no remorse for the victim.

Third, Smith cites the prosecutor's reference to the photographs in evidence which had been seen by the three-judge panel. The argument has no merit since photographs, even when introduced in evidence at the penalty phase, are proper under R.C. 2929.03(D) (1) because they are relevant to the factual context of the aggravating circumstances. *State v. DePew* (1988), 38 Ohio St. 3d 275, 281, 528 N.E.2d 542, 551.

Finally, Smith correctly observes that the record demonstrates that during argument the prosecutor erroneously commented on mitigating factors that were not raised in the presentation of Smith's case. *State v. DePew, supra* at 289, 528 N.E.2d at 557. Although the Supreme Court said in *DePew, supra* at 290, 528 N.E.2d at 558, that the "better practice" is to refrain from any reference to or summary of the mitigating factors not raised by the defendant, in the case *sub judice* the three-judge panel's sentencing opinion lists only its understanding of the aggravating factors

without reference to the absence of mitigating factors. Therefore, we hold that the prosecutor's summary of absent mitigating factors was not considered an aggravating circumstance by the three-judge panel. Accordingly, it was not prejudicial error. See *State v. Cooey, supra.*

In bench trials without a jury the trial court is presumed to have considered only relevant, competent and material evidence. *State v. Benner* (1988), 40 Ohio St. 3d 301, 533 N.E.2d 701. The three-judge panel's opinion illustrates that it correctly carried out the statutory weighing process unswayed by the prosecutorial arguments here questioned by Smith. His seventh assignment of error is, accordingly, without merit.

### J.

Smith's ninth assignment of error contends that the aggravating circumstances do not outweigh the mitigating factors beyond a reasonable doubt. We consider this assignment as a part of our statutory duty for independent review as required by law. It is without merit for the reasons detailed *infra* in our independent review of the death sentence.

### K.

In his eleventh and twelfth assignments of error Smith raises questions that are subsumed in the third aspect of our review in this case. They are without merit in view of our determination *infra* that the death penalty imposed here is not disproportionately severe in comparison with the penalties imposed in the applicable range of similar cases.

### II.

Having determined that there is no merit in any of Smith's eighteen assignments of error, we move on to the second part of our statutorily mandated review of this case -- the consideration of the offense and the offender, and the independent weighing of all the relevant facts and circumstances demonstrated in the record, to determine whether the aggravating circumstances outweigh whatever may be said in mitigation of the death penalty imposed in the court below.

We begin with the expert assessments made by the clinical psychologist who examined Smith. Dr. Schmidtgoessling, the director of the Court Psychiatric Center, interviewed and administered the standard Wechsler Adult Intelligence Test and Minnesota Multiphasic Personality Inventory. She testified that Smith's psychiatric history reflected that he was abused as a child by his mother and stepfather. At ten years of age he spent three years in Longview Hospital's

children's unit. He dropped out of school – according to Schmidtgoessling, in the tenth grade – with a history of hyperactivity, learning deficiency, poor achievement, and disciplinary problems. Dr. Schmidtgoessling found that Smith's IQ fluctuated, but that he was not retarded. Smith told her that he had a long-standing history of alcohol and marijuana use and a two-year history of cocaine use, which she described as "moderate." Dr. Schmitgoessling concluded that Smith did not have a mental illness or defect, but suffered from a nonorganic personality defect that made him impulsive and "sensitive of being ripped off."

In addition to the brief unsworn statement he gave in the court below, Smith presented his mother, two uncles, and his wife's minister (the last by deposition) as witnesses in the penalty phase. They testified as to Smith's difficult childhood in foster homes and at Longview Hospital. He sought counselling from his wife's minister for his drug abuse for ninety days or so, during which time he attended church services. He was employed by his uncle's employer for a brief period and was a good worker.

Of the mitigating factors listed in R.C. 2929.04(B), Smith offered evidence on the following: Factor 1, "[t]he victim of the offense induced or facilitated it;" Factor 2, "[i]t is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation;" and Factor 7, "[a]ny other factors that are relevant * * *."

We have considered Smith's confession, in which he said that Bradford threatened him with a kitchen knife, his difficult childhood, and the personality defect that affected his ability to relate to others. We cannot accept Smith's claim that Bradford induced or provoked Smith's response in light of the uncontradicted physical evidence relative to her slight stature, her severe respiratory disability, the absence of defensive wounds and marks on her body as noted by the coroner, the ten stab wounds, and the location of Bradford's blood and bloody clothing in her apartment. Nor can we find that Smith's childhood and personality defect, when compared to the nature and circumstances of the offenses herein, are of a quality to mitigate his sentence to the extent that the aggravating circumstances of rape and aggravated robbery do not outweigh the mitigating factors beyond a reasonable doubt.

We are persuaded instead that the two aggravating circumstances, as demonstrated in this record, are such that they must be held to outweigh the case made in favor of the mitigation of Smith's punishment. We do not, therefore, have an appropriate basis for overturning the lower court's sentence of death in this aspect of our appellate review.

III.

Our final task is to determine if Smith's death sentence is appropriate, based upon a consideration of whether it is excessive or disproportionate to the penalty imposed in similar cases. This proportionality review is not constitutionally mandated, but is instead controlled by R.C. 2929.05(A), and it contemplates a review of only those capital cases in which the death penalty has been imposed in Hamilton County, Ohio, *State v. Steffen, supra* at paragraph one of the syllabus. It does not, as Smith argues, contemplate a comparison of this case with a field of cases in which the sentences fall short of the ultimate sanction of death. *State v. Coleman, supra.* In comparing the facts and circumstances in this record as they bear upon the offense and the offender with what appears in our previous death-penalty decisions, we are persuaded that the imposition of the death penalty in this case is neither excessive nor disproportionate, and that it is an appropriate sentence.

We affirm the judgment of the court of common pleas.

*Judgment affirmed.*

SHANNON, P.J., UTZ and GORMAN, JJ.